UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Marcus Champs,

     Petitioner,       Court File No. 14-cv-995 (JRT/LIB)

  v.

                **REPORT AND RECOMMENDATION**

Tom Roy, Minnesota Department
of Corrections Commissioner,

     Respondent.

---

   This matter comes before the undersigned United States Magistrate Judge upon Petitioner Marcus Champs' Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, [Docket No. 1]. This case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

   For reasons discussed herein, the Court recommends that the Petition for writ of habeas corpus, [Docket No. 1], be **DENIED** and this action be **DISMISSED with prejudice.**

## I. BACKGROUND AND STATEMENT OF FACTS

   On or about October 7, 2013, Petitioner Marcus Champs ("Petitioner"), a state prison inmate, filed a timely *pro se* Petition for a writ of habeas corpus with the Court challenging his Minnesota state court conviction for second degree murder. (Petition [Docket No. 1]).[1]

   In the relevant underlying state court proceedings, Petitioner was charged with both first degree murder, in violation of Minn. Stat. § 609.185, and second degree murder, in violation of Minn. Stat. § 609.19. State v. Champs, No. A08-1140, 2010 WL 606192, at *1 (Minn. App. Feb. 23, 2010). Because Petitioner was then seventeen years old, the trial court, the District Court of

---

[1] See Order dated December 31, 2013, [Docket No. 6] (granting motion for reconsideration of initial dismissal of the petition as untimely, vacating the initial dismissal, and holding that Petitioner had timely filed his petition for writ of habeas corpus).

Hennepin County in the Fourth District of the State of Minnesota, had original exclusive jurisdiction over the proceedings pursuant to Minn. Stat. §§ 260B.007, Sub. 6(b), and 260B.101, Subd. 2 (2004) (the "automatic certification statute").[2]   A jury acquitted Petitioner of first degree murder but found Petitioner guilty of second degree murder. Id. The trial court ultimately sentenced Petitioner to 325 months of incarceration on the conviction for second degree murder. Id. Petitioner filed a post-conviction motion for a new trial that the trial court denied. Id.

On direct appeal, Petitioner, represented by counsel, challenged: (a) the constitutionality of the Minnesota automatic certification statute; (b) the district court's grant of the state's challenge for cause to two prospective jurors; (c) the district court's determination that Petitioner had failed to make a *prima facie* showing of racial discrimination as part of his Batson challenge to the state's peremptory strike of an African American prospective juror; (d) the district court's decision to submit to the jury the determination of whether one of the state's witnesses had been an accomplice rather than instructing the jury that the witness had been an accomplice; (e) the fairness of the trial due to alleged prosecutorial misconduct in misstating the burden of proof; and (f) the district court's denial without a hearing of Petitioner's post-conviction motion for a new trial. Id.

The Minnesota Court of Appeals concluded that: (a) Petitioner had waived his challenge to the constitutionality of Minnesota's automatic certification statute by failing to raise the issue at trial, Id. at 2; (b) the district court's grant of the state's challenges to the prospective jurors had

---

[2] The Minnesota Court of Appeals described the effect of the Minnesota Automatic Certification statute:

> Subject to certain exceptions, the juvenile court has original and exclusive jurisdiction in proceedings concerning any child who is alleged to be delinquent.  Minn. Stat. § 260B.101, subd. 1 (2004).  The juvenile court lacks jurisdiction over proceedings concerning a child who is excluded from the statutory definition of a delinquent child. Id. subd. 2. Minn. Stat. § 260B.007, subd. 6(b) excludes from the definition of a delinquent child a "child alleged to have committed murder in the first degree after becoming 16 years of age."  The statute is commonly referred to as "automatic waiver, automatic certification, or legislative waiver." State v. Behl, 564 N.W.2d 560, 563 (Minn. 1997).

been proper, Id. at 4; (c) the district court had not clearly erred in finding that Petitioner had failed to make a *prima facie* showing of racial discrimination in his Batson challenge, Id. at 4-5; (d) that the district court had not abused its discretion in submitting the issue to the jury of whether or not one of the testifying witness had been an accomplice, Id. at 6; (e) that the prosecutor's statements regarding the burden of proof had not been misconduct under Minnesota case law, Id. at 7-8; and, (f) the trial court had not abused its discretion in denying the motion for a new trial.  Id. at 10. On February 23, 2010, the Minnesota Court of Appeals affirmed Petitioner's conviction. Id. at 10.

Petitioner next sought relief by petitioning the Minnesota Supreme Court to exercise discretionary review of the February 23, 2010, Minnesota Court of Appeals' decision, raising as issues the constitutionality of the Minnesota automatic certification statute, the district court's grant of the state's for cause challenge to two prospective jurors, and the sufficiency of Petitioner's showing of a *prima facie* case of racial discrimination as part of his Batson challenge. (Petition [Docket No. 1], 2). The Minnesota Supreme Court denied the petition for discretionary review on March 18, 2011. Id.

Petitioner thereafter filed a petition for post-conviction relief in the state district trial court. Id. As grounds for relief, Petitioner asserted that his trial counsel had provided ineffective assistance by failing to: 1) challenge the constitutionality of the Minnesota automatic certification statute; 2) object to the district court's submission of an accomplice liability instruction to the jury at trial; and, 3) object to improper remarks made by the prosecutor during closing arguments.  Champs v. State, No. A11-2110, 2012 WL 2874027 * 2 (Minn. App. July 16, 2012). Petitioner also asserted that his appellate counsel had been ineffective by failing to: 1) cite federal constitutional law in support of his prosecutorial misconduct claim on direct appeal;

2) raise the issue of prosecutorial misconduct in Petitioner's petition for discretionary review to the Minnesota Supreme Court; 3) challenge the district court's ruling regarding the admissibility of autopsy photographs on direct appeal; and, 4) challenge the constitutionality of the automatic certification statute in his motion for a new trial. Id. at 3. The district court summarily denied Petitioner's petition for post-conviction relief. Id. at 1.

Petitioner appealed the denial of his petition for post-conviction relief, in the process raising an additional claim that his appellate counsel had been ineffective by failing to raise a claim of ineffective assistance of trial counsel regarding the accomplice-liability jury instruction. Id. at 1, 3.  The Minnesota Court of Appeals concluded that Petitioner could not raise that issue for the first time on appeal from denial of his petition for post-conviction relief. Id. The Court of Appeals also held that Petitioner had procedurally defaulted his claims of ineffective assistance of trial counsel, reasoning that, under State v. Knaffla, 243 N.W.2d 737 (Minn. 1976), and Leake v. State, 737 N.W. 531, 535 (Minn. 2007), Petitioner had been required to bring his claims of ineffective assistance of trial counsel in his original direct appeal. Champs, 2012 WL 2874027 *1-2. In addition, the Court of Appeals affirmed the district court's denial of Petitioner's claims of ineffective assistance of appellate counsel, reasoning: 1)  Petitioner had failed to show that the result of his direct appeal would have been different had his appellate counsel argued federal constitutional law, Id. at 4; 2) not raising the issue of prosecutorial misconduct in the petition for Supreme Court discretionary review had been a reasonable strategic decision by Petitioner's appellate counsel, Id.; 3) Petitioner had asserted only a legal conclusion unsupported by specific facts regarding the alleged failure to challenge the district court's ruling on the admissibility of autopsy photos, Id. at 5; and, 4) Petitioner's appellate counsel had not provided ineffective assistance by not challenging the automatic certification statute, which had already been

4

previously held constitutional by the Minnesota Supreme Court. Id. at 3-4. Ultimately, the Minnesota Court of Appeals affirmed the district court's summary denial of Petitioner's petition for post-conviction relief. Id. at 5.

Petitioner lastly filed a petition to the Minnesota Supreme Court for discretionary review of the Minnesota Court of Appeals' decision affirming the denial of post-conviction relief. (Petition [Docket No. 1]). The Minnesota Supreme Court denied the petition for discretionary review on October 16, 2012. (Id., Attachment 1).

Petitioner filed the present Petition for writ of habeas corpus on October 7, 2013. (Petition [Docket No. 1]), and it was transferred to this Court on April 7, 2014. [Docket No. 14].

## III. PETITIONER CHAMPS' PETITION FOR WRIT OF HABEAS CORPUS, [DOCKET NO. 1]

Petitioner currently alleges five (5) claims, including: (1) ineffective assistance of trial counsel for failing to challenge the constitutionality of the Minnesota automatic certification statute; (2) ineffective assistance of trial counsel for failing to object to the district court's accomplice liability jury instructions; (3) ineffective assistance of appellate counsel for failing to challenge the district court's admission of autopsy photographs; (4) ineffective assistance of appellate counsel for failing to raise a claim of prosecutorial misconduct in Petitioner's petition to the Minnesota Supreme Court for review of the February 23, 2010, decision of the Minnesota Court of Appeals; and (5) that the district court erred in concluding that Petitioner had failed to demonstrate a *prima facie* case of racial discrimination at the first step of his Batson challenge.

### A. Standard of Review

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, relief may not be granted to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

    (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or,

    (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law exists when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Importantly, it is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). The exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal law errors raised by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rose, 455 U.S. at 518-19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

To satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law claims to the highest available state court before seeking habeas corpus relief in federal court. O'Sullivan, 526 U.S. at 845; Duncan, 513 U.S. at 365-66; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("Before we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court."). Because federal courts will not entertain unexhausted habeas corpus claims, petitions that include such claims are subject to summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

In addition, "it is not the province of the federal court to decide whether a matter ought to be considered procedurally defaulted under state law[.]" Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001) (citing Wainwright v. Sykes, 433 U.S. 72, 87, 90 (1977); May v. State of Iowa, 251 F.3d 713, 2001 WL 515053 at *3 (8th Cir. May 16, 2001)). Under the adequate and independent state-law doctrine, a federal court conducting a habeas corpus review ordinarily must refrain from reviewing any issue that the state court determined had been procedurally

defaulted under state law. Id. at 900 (citing Owsley v. Bowersox, 234 F.3d 1055, 1058 (8th Cir. 2000)).

### B. Petitioner's Claims of Ineffective Assistance of Trial Counsel are Procedurally Defaulted.

Petitioner first asks the Court to review his claims that his trial counsel provided ineffective assistance by failing to challenge the constitutionality of the Minnesota automatic certification statute and by failing to object to the district court's accomplice jury liability instructions.  The Minnesota Court of Appeals determined that, under Minnesota law precluding post-conviction consideration of all claims that were known at the time of the direct appeal, Petitioner had procedurally defaulted his claims of ineffective assistance of trial counsel by failing to raise them either on direct appeal or in his post-conviction motion for a new trial. Champs, 2012 WL 2874027 * 2 (citing Knaffla, 243 N.W.2d at 741; Leake, 737 N.W.2d at 535). The Court of Appeals also held that neither of the exceptions under Minnesota law that would excuse the default was applicable to Petitioner's claims.[3] Id.

Although a federal court conducting a habeas corpus review ordinarily must refrain from reviewing any issue that the state court determined had been procedurally defaulted under state law, an exception exists if the state judgment is based on a state rule that is inconsistently followed. Murray, 269 F.3d at 900 (citing Owsley v. Bowersox, 234 F.3d 1055, 1058 (8th Cir. 2000); Id. at 899 (citing Ford v. Georgia, 498 U.S. 411, 424-25 (1991)).[4] In the present case,

---

[3]Minnesota recognizes two exceptions to the procedural bar set forth in Knaffla, 243 N.W.2d 737: (1) a claim is so novel that the legal basis was not available on direct review; and (2) the interests of justice require review, and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. Fraction v. Minnesota, 678 F.Supp.2d 908, 917 (D.Minn.2008) (citing Townsend v. State, 723 N.W.2d 14, 18 (Minn.2006) (citations omitted)).

[4]See also Trevino v. Thaler, 133 S. Ct. 1911, 1917 (2013) (holding that "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law"). Petitioner has demonstrated no grounds in the present case upon which the Court could apply any exception to dismissal of his procedurally defaulted claim with prejudice.

however, the Minnesota <u>Knaffla</u> rule has been consistently followed for more than thirty years. <u>Id.</u> at 899-900 (citing <u>Townsend v. State</u>, 582 N.W.2d 225, 227-29 (Minn. 1998); <u>Fox v. State</u>, 474 N.W.2d 821, 824-25 (Minn. 1991); and <u>Case v. State,</u> 364 N.W.2d 797, 799 (Minn. 1985)). Accordingly this court may not review the determination of the Minnesota Court of Appeals that Petitioner has procedurally defaulted his claims of ineffective assistance of trial counsel.

### C.  Petitioner's Claims of Ineffective Assistance of Appellate Counsel.

Petitioner next seeks review of the Minnesota Court of Appeals' determinations that his appellate counsel had provided ineffective assistance by deciding not to raise the issue of prosecutorial misconduct in the petition for discretionary review to the Minnesota Supreme Court, and in failing to challenge on direct appeal the district court's ruling regarding the admissibility of autopsy photographs. Petitioner makes no argument that the determinations were based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.   Accordingly, this Court may recommend granting the petition only if the Court of Appeals decision was contrary to law or involved the unreasonable applicable of clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d).

In ruling on the claims that Petitioner's appellate counsel had provided ineffective assistance, the Minnesota Court of Appeals noted that, to succeed on these claims, Petitioner had been required to show that appellate counsel's performance was objectively deficient and that there was a reasonable probability that, but for counsel's alleged errors, the outcome would have been different.  <u>Champs</u>, 2012 WL 2874027 * 4 (citing <u>Arrendondo v. State</u>, 754, N.W.2d 566, 571 (Minn. 2008). The Court of Appeals also noted that Petitioner was required to overcome a presumption that the performance of his appellate counsel had fallen within the wide range of reasonable representation. <u>Id.</u> (citing <u>Wright v. State</u>, 765 N.W.2d 85, 91 (Minn. 2009). Those

state law principles are identical to the standard for determining claims of ineffective assistance of counsel set forth by the U.S. Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984). Accordingly, in ruling on Petitioner's claims of ineffective assistance of appellate counsel, the Minnesota Court of Appeals identified and applied the correct provisions of federal law.

      1.  <u>Strategic Decision Not to Raise Prosecutorial Misconduct in Petition for Review</u>

In ruling on the claim that Petitioner's appellate counsel had been ineffective in failing to raise the issue of prosecutorial misconduct in his petition for discretionary review to the Minnesota Supreme Court, the Minnesota Court of Appeals cited to a Minnesota case for the propositions that counsel appealing a criminal conviction has no duty to raise all possible issues, and that when counsel and the client have diverging opinions as to what issues to raise on appeal, counsel has no duty to raise issues that would detract from other more meritorious issues. <u>Champs</u>, 2012 WL 2874027 * 4 (citing <u>Dent v. State</u>, 441 N.W.2d 497, 500 (Minn. 1989)).  In making its determination, the Minnesota Court of Appeals considered a letter to Petitioner in which Petitioner's appellate counsel stated that she had not raised the issue of prosecutorial misconduct because the appellate courts of Minnesota had ruled against Petitioner on the issue and had instead chosen to raise the issues that she thought the Minnesota Supreme Court would possibly be most interested in reviewing.  <u>See</u> <u>Id.</u> Based on that letter, the Court of Appeals ultimately concluded that the decision not to raise the prosecutorial misconduct claim had been a reasonable strategic one.  <u>Id.</u>

The state law principles on which the Minnesota Court of Appeals relied are identical to, and indeed are drawn from, holdings the U.S. Supreme Court set forth in <u>Jones v. Barnes</u>, 463 U.S. 745, 751  (1983); <u>see also</u> <u>Dent v. State</u>, 441 N.W.2d at 500 (citing <u>Jones</u>, 463 U.S. at 745).

Petitioner conclusorily asserts that, even if the Minnesota Court of Appeals'
determination that his appellate counsel's decision was a strategic choice not to raise the
prosecutorial misconduct issue, the ruling by the Minnesota Court of Appeals was itself a post
hoc rationalization, which Petitioner contends is contrary to Wiggins v. Smith, 539 U.S. 510, 526
(2003). Wiggins concerned an appointed counsel's decision not to pursue further investigation
into the social history of a client despite the existence of prevailing local and national
professional standards that weighed in favor of continuing the investigation, the existence of
funds to do the investigation, and the discovery of facts that warranted further investigation. Id.
at 524-28. The U.S. Supreme Court opined that, in light of all of the affirmative evidence
indicating that the decision had been based on the inattentiveness of counsel, the determination
of the Maryland Court of Appeals that the decision had been strategic "resemble[d] more a *post
hoc* rationalization[.]"). Id. at 526.  There is no similar evidence in the record now before this
Court indicating that Petitioner's appellate counsel's decision was due to inattentiveness rather
than actual strategic decision making.  To the contrary, the record indicates that the Minnesota
Court of Appeals had affirmative evidence indicating that Petitioner's appellate counsel made a
reasoned decision not to present the issue of prosecutorial misconduct in favor of raising claims
that counsel believed were more likely to obtain a grant of the petition for discretionary review.
As such, Petitioner does not offer any case with materially indistinguishable facts in which the
U.S. Supreme Court arrived at a "conclusion opposite to that reached by" the Minnesota Court of
Appeals. See Williams, 529 U.S. at 413.  Accordingly, the Court cannot conclude that the
Minnesota Court of Appeals' decision on this issue was contrary to law.

As discussed above, the Minnesota Court of Appeals considered the letter from
Petitioner's appellate counsel stating that her decision not to raise Petitioner's claims of

prosecutorial misconduct had been made in an attempt to increase Petitioner's chances of obtaining further appellate review on other issues.  Thus, the Court of Appeals had a reasonable basis for its decision and this Court also cannot conclude that the decision was the result of an unreasonable application of clearly established federal law. See Id. at 408; see also  Strickland, 466 U.S. at 690 (noting "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . .").

       2.  Failure to Challenge Admission of Autopsy Photographs.

Petitioner also asks the Court to review the decision of the Minnesota Court of Appeals affirming the denial of his claim that his appellate counsel had provided ineffective assistance by failing to challenge on direct appeal, the district court's admission of autopsy photographs. Petitioner asserts that the Minnesota Court of Appeals wrongly denied his claim of ineffective assistance by appellate counsel when it concluded that the decision not to raise the issue of the admissibility of the autopsy photos had been strategic. (Petitioner's Amended Reply in Support of Petition, [Docket No. 23], at 10). Petitioner is incorrect. The Court of Appeals in denying this claim in fact observed that Petitioner had alleged only conclusory arguments that were unsupported by allegations of fact. Champs, 2012 WL 2874027 * 5. The Court of Appeals concluded that, under Minnesota case law, Petitioner's claim of ineffective assistance of appellate counsel regarding the autopsy photographs failed because he had not alleged facts in support of the legal conclusions asserted in his claim. Id. (citing Leake, 737 N.W.2d at 355 ("Allegations in a post-conviction petition must be more than argumentative assertions without factual support.").  That principle is analogous to the federal law in this circuit set forth in Wiggins v. Lockhart, 825 F.2d 1237, 1238 (8th Cir. 1987) ("In order to warrant relief, . . . a habeas corpus petitioner must allege sufficient facts to establish a constitutional claim. Mere

conclusory allegations will not suffice." (citing <u>Allard v. Nelson</u>, 423 F.2d 1216, 1217 (9th Cir. 1970)); <u>see also</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 (1977) (opining that a habeas claim presented on "conclusory allegations unsupported by specifics is subject to summary dismissal[.]").

As correctly noted by the Minnesota Court of Appeals, Petitioner offered and still offers no factual allegations to support his claim. Nor does Petitioner point the Court to a case in which the U.S. Supreme Court decided a case with materially indistinguishable facts with a result contrary the decision by the Minnesota Court of Appeals. Accordingly, the Court cannot conclude that the decision of the Minnesota Court of Appeals was contrary to law or an unreasonable application of federal law.

**D.** <u>Batson</u> challenge.

Petitioner next asks the Court to review the determination of the Minnesota Court of Appeals that the trial court did not err by concluding that he had failed to demonstrate a *prima facie* case of racial discrimination when raising his <u>Batson</u> challenge to the state's exercise of a peremptory challenge during jury selection. Unlike Petitioner's other claims, this claim was first raised in the context of Petitioner's original direct appeal

In reviewing the district court's determination of whether Petitioner had sufficiently alleged a claim of racial discrimination when raising his <u>Batson</u> challenge, the Minnesota Court of Appeals cited the three step analysis set forth in <u>Batson v. Kentucky</u>, 476 U.S. 79, 86 (1986), for determining whether a peremptory challenge was racially motivated. <u>Champs</u>, 2010 WL 606192, at *4. Identifying the steps of the test, the Minnesota Court of Appeals noted that the first step required the objecting party to establish a *prima facie* case of purposeful discrimination. <u>Id.</u> (citing <u>Batson</u>, 476 U.S. at 96). The Court of Appeals then noted that, if the party objecting to

the peremptory challenge is able to establish a prima facie case of purposeful discrimination, the burden shifts to the proponent of the strike to provide a race-neutral explanation. Id. (citing Batson, 476 U.S. at 97). The Court of Appeals also listed the third step, which required the court to determine whether the objecting party has proven purposeful discrimination. Id. (citing Batson, 476. U.S. at 98).

After identifying the factors, the Minnesota Court of Appeals reviewed the determination of whether Petitioner had made a sufficient prima facie case of purposeful discrimination. The Court of Appeals quoted the following articulation of the elements of a *prima facie* case set forth in State v. Martin, 773 N.W.2d 89, 101 (Minn. 2009): "(1) 'that one or more members of a racial group have been peremptorily excluded from a jury' and (2) 'the circumstances of the case raise an inference that the exclusion was based on race.'" Champs, 2010 WL 606192, at *4. Although articulated in a slightly different manner, the elements for alleging a *prima facie* case as articulated by Martin are identical to the elements set forth in Batson. See 476 U.S. at 96 (stating that the party objecting to the peremptory strike must first demonstrate that the prosecutor exercised peremptory challenges to exclude one or more members of the objector's racial group from the jury, and that all of the relevant circumstances raised an inference that the prosecutor did so to exclude the prospective juror on account of their race).

The Minnesota Court of Appeals then stated that, pursuant to state law, it would review the district court's determination only for clear error. Champs, 2010 WL 606192, at *4 (citing State v. White, 684 N.W.2d 500, 507 (Minn. 2004). The U.S. Supreme Court has held that "a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." Snyder v. Louisiana, 552 U.S. 472, 477 (2008) (citing Hernandez v. New York, 500 U.S. 352, 369 (1991)). Based on the foregoing, the Minnesota Court of Appeals identified and

applied the correct principles of federal law when reviewing the trial court's determination that Petitioner had failed to make a *prima facie* case of racial discrimination at the first step of his Batson challenge.

Petitioner asserts that the Minnesota Court of Appeals affirmed the determination of the district court solely on the basis that there was one African American juror left sitting on the jury. (Petitioner's Amended Reply in Support of Petition, [Docket No. 23], at 9). That assertion is also incorrect. Reviewing the *prima facie* determination, the Court of Appeals noted that Petitioner's trial counsel had argued only that the peremptory strike would result in leaving a single African-American serving on the jury, and Petitioner's counsel had not argued that the prosecutor's use of the peremptory challenge had been motivated by racial discrimination. Champs, 2010 WL 606192, at * 5. The Court of Appeals also noted that, at the time the peremptory strike occurred, three other African-American prospective jurors had been interviewed, two of whom Petitioner himself had attempted to excuse for cause, while the third had been seated. Id. at 5. The Court of Appeals further noted that the African American prospective juror that had been struck was the first member of a minority struck by the prosecutor. Id. Finally, the Minnesota Court of Appeals concluded that the district court had not clearly erred in holding that circumstances did not warrant an inference that the prosecutor had attempting to limit the number of African Americans on the jury. Id.

Petitioner again offers no case decided by the U.S. Supreme Court on materially indistinguishable facts that was resolved in a manner contrary to the decision of the Minnesota Court of Appeals. Nor does Petitioner offer any authority on which to conclude that the decision of the Minnesota Court of Appeals was an unreasonable application of clearly established federal law.

In summary, because two of Petitioner's claims have been procedurally defaulted under state law, and because Petitioner has failed to show that the Minnesota Court of Appeals decided any of his remaining claims in a manner contrary to federal law or by unreasonably applying clearly established federal law, the Court recommends **DENYING** the Petition for a writ of habeas corpus, [Docket No. 1], and **DISMISSING** Petitioner's claims **with prejudice**.

### E.  Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

### III.  CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

1. That the Petition for a writ of habeas corpus, [Docket No. 1], be **DENIED** and this action

   be **DISMISSED with prejudice.**


Dated: January 27, 2015                                       s/ **Leo I. Brisbois**_____
                                                              Leo I. Brisbois
                                                              U.S. MAGISTRATE JUDGE

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 10, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by February 24, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.